In re YOUNG WOMEN'S ASS'N OF CITY OF TROY et al. (No. 230-26.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. CORPORATIONS ⊜⧴581—CONSOLIDATION—STATUTORY PROVISIONS—"PROMOTION OF THE INTERESTS OF YOUNG WOMEN."

Membership Corporations Law (Consol. Laws, c. 35) § 7, authorizes the consolidation of any two or more membership corporations incorporated under general or special laws for kindred purposes, being purposes for which a corporation may be formed under any article of that law. Section 40, authorizes the creation of membership corporations for any lawful purpose, except the purpose for which a corporation may be created under any other article of that law, or any other general law. Article 8 authorizes the incorporation of Young Men's or Young Women's

⊜⧴For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Christian Associations for the purpose of improving the spiritual, mental, social, and physical condition of young men or young women, being limited in its scope, however, to Protestant evangelical denominations. Laws 1848, c. 319, as amended by Laws 1883, c. 446, authorized associations for benevolent, charitable, literary, historical, scientific, missionary, or mission, and Sunday school purposes, or for the purpose of mutual improvement in religious knowledge or the furtherance of religious opinion, etc. *Held*, that an association organized under such law, the purposes of which were stated in its certificate as the amelioration of the condition and the promotion of the interests of young women, was for a kindred purpose with a Young Women's Christian Association, and could be consolidated with such an association, as the "promotion of the interests of young women" includes everything that makes for the development of perfect womanhood, whether spiritual, material, mental, or moral, and the declared purposes were identical with the purposes stated in article 8.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2322–2329; Dec. Dig. ☞581.]

2. CORPORATIONS ☞583—CONSOLIDATION—RIGHTS OF DISSENTING MEMBERS.
The members of a young women's association organized under Laws 1848, c. 319, as amended by Laws 1883, c. 446, took their rights as members subject to the reserved right of the Legislature to alter or amend the law, and cannot complain that their fellow members, by a majority fixed by law, have decided that the objects of the association can best be accomplished by a new corporation, the declared purposes of which are broad and comprehensive enough to cover all the objects of the original corporation, though as a result they have less rights in the election of officers or directors, especially as a majority of the members might accomplish this same result without a consolidation under Membership Corporations Law, § 8, authorizing by-laws regulating the admission, voluntary withdrawal, censure, suspension, and expulsion of members.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2338–2340; Dec. Dig. ☞583.]

Howard, J., dissenting.

Appeal from Special Term, Albany County.

Application by the Young Women's Association of the City of Troy and another to consolidate under the name of the Young Women's Christian Association of the City of Troy. From an order permitting the consolidation of the two corporations, Martha A. Silliman and another appeal. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Clark Cipperly, of Troy, for appellants.
William H. Hollister, Jr., of Troy, for respondents.
Wm. J. & Wm. C. Roche, of Troy, for Amanda R. Cluett.

WOODWARD, J.   In the year 1885 a sufficient number of persons, of the requisite capacities, organized the Young Women's Association of the City of Troy, under the provisions of chapter 319 of the Laws of 1848, and the amendments thereof, and this association continued to exist down to the year 1915, when the Young Women's Christian Association of the City of Troy, Incorporated, was organized under the provisions of article 8 of the Membership Corporations Law, and proceedings were had which resulted in an order of the Special Term of the Supreme Court, permitting the consolidation of the two cor-

porations under the corporate name of the latter. The appellants were members of the original association, and were among the minority members who refused to acquiesce in the consolidation.

[1] There is no question raised here that all of the proceedings leading up to the granting of the order of consolidation were regular under the provisions of the statute, but it is urged on the part of the appellants that as the two associations, as they existed prior to the present proceeding, could not have been organized under the same article of the Membership Corporations Law, they were not of a kindred nature, and could not, therefore, be consolidated. Section 7 of article 2 of the Membership Corporations Law now provides that:

"Any two or more membership corporations, incorporated under or by general or special laws, for kindred purposes, being purposes for which a corporation may be formed under any article of this chapter, may enter into an agreement for the consolidation of such corporations," etc.

And we are clearly of the opinion that under the law as it now exists the two corporations could not have been created under the same articles of the Membership Corporations Law. The difficulty we find in agreeing with the appellants' contention is that the Young Women's Association of Troy was created in the year 1885, before the enactment of the Membership Corporations Law (chapter 559, Laws of 1895), and as the law existed at that time it was the only authority for the creation of a young women's association of this general character. Whether its purposes were such as are now provided for in article 8 of the Membership Corporations Law must be determined by a consideration of the history of legislation and the fair construction of the language used.

Chapter 319, § 1, of the Laws of 1848 provided that:

Any "five or more persons of full age * * * who shall desire to associate themselves for benevolent, charitable, scientific or missionary purposes, may make, sign and acknowledge before any officer * * * a certificate in writing, in which shall be stated the name or title by which such society shall be known in law, the particular business and objects of such society, the number of trustees, directors or managers to manage the same," etc.

It must be clear, we believe, that under this act there was no authority for such an association as is contemplated by the provisions of article 8 of the Membership Corporations Law, which provides especially for the incorporation of persons conforming to Protestant evangelical denominations, and, if there had been no change in the scope of the statute, we should be inclined to the proposition that an association organized under its provisions could not be kindred in its purposes with a corporation created under the provisions of article 8 of the Membership Corporations Law. In the year 1872, however, the Legislature enacted "An act further to amend chapter three hundred and nineteen of the Laws of 1848," etc., and provided that:

"Any five or more persons of full age * * * who shall desire to associate themselves together for benevolent, charitable, literary, scientific, missionary, or mission or other Sunday school purposes, or for the purpose of mutual improvement in religious knowledge or the furtherance of religious opinion, or for any two or more of such objects combined, may make, sign," etc., the required certificate. Laws 1872, c. 649, § 1.

This was followed by chapter 526 of the Laws of 1881, and by chapter 446 of the Laws of 1883, both enlarging the scope of the statute; the latter act providing that:

The five persons of full age "who shall desire to associate themselves for benevolent, charitable, literary, historical, scientific, missionary or mission or Sunday school purposes, or for the purpose of mutual improvement in religious knowledge, or for the furtherance of religious opinion, or for the purpose of promoting and cultivating the fine arts by establishing a gallery, or collections of pictures or statuary, including other objects of the fine arts, and for the purpose of maintaining a library, or as a society for the prevention of crime, or for any two or more of such objects, may make and sign," etc.

This last statute, it will be observed, was enacted only two years prior to the organization of the Young Women's Association of Troy, and it unquestionably gave authority for the organization of an association for the "purpose of improving the spiritual, mental, social and physical condition of young men, or of young women, as the case may be," as now provided by article 8 of the Membership Corporations Law. It is true it was not limited in its scope to Protestant evangelical denominations. Under its provisions Roman Catholics, Jews, Mohammedans, or other religious denominations might have organized young men or young women into associations for the purposes defined; but there can be no question that under the laws as they existed in 1885 the young women of the city of Troy were authorized to organize an association which would conform in all respects to the present Young Women's Christian Association, and all of these powers are now embraced in articles 3 and 8 of the Membership Corporations Law; the latter being a limitation of the powers found in article 3, where it is desired to confine the active membership to the Protestant evangelical denominations. Under article 3 Roman Catholics, Jews, Mohammedans, or other religious denominations may create their associations for "the purposes of improving the spiritual, mental, social and physical condition of young men, or of young women"; for it is provided by section 40 of the Membership Corporations Law that:

"A membership corporation may be created under this article for any lawful purpose except a purpose for which a corporation may be created under any other article of this chapter, or any other general law than this chapter."

And it cannot be doubted that a Roman Catholic association, for the avowed purpose of "improving the spiritual, mental, social and physical condition of young men, or of young women," would be lawful, and within the letter and spirit of the act, and would be "incorporated under or by general or special laws, for kindred purposes," as defined in section 7 of the Membership Corporations Law, "being purposes for which a corporation may be formed under any article of this chapter."

If we are right in this, it only requires that we should determine the question whether the Young Women's Association of Troy, organized in 1885, was organized for the purposes "of improving the spiritual, mental, social and physical condition" of young women. If

it was, then it is for a kindred purpose with the Young Women's Christian Association of the City of Troy, and the two may be consolidated upon conforming to the requirements of the statute. It is to be kept in mind that it is where the necessary number of people "desire to associate themselves for benevolent, charitable, literary, historical, scientific, missionary or mission or Sunday school purposes, or for the purpose of mutual improvement in religious knowledge, or the furtherance of religious opinion, or for the purpose of promoting and cultivating the fine arts by establishing a gallery, or collections of pictures and statuary, including other objects of the fine arts, and for the purpose of maintaining a library, or as a society for the prevention of crime, or for any two or more of such objects" (chapter 446, Laws of 1883), that they are authorized to make the necessary certificate "in which shall be stated the name or title by which such society shall be known in the law, the particular business and objects of such society," etc. Having the desire to associate for any one or more of the above-mentioned purposes, the moving parties make a certificate setting out the "particular business and objects of the society," for the purpose of showing that it is within the statute, and the incorporators of the Young Women's Association of Troy recited in their certificate that:

The "objects and particular business of the association are the amelioration of the condition and the promotion of the interests of young women."

Probably the real purpose of the statute would have been best served by a statement that the organization was for one or more of the enumerated objects, as for a benevolent, or charitable, or literary, or historical society; but there can be no question that the declared purposes were well within the scope of the statute, and embraced elements of one or more of the specific matters mentioned. To ameliorate the condition of young women is clearly a benevolent purpose. It is equally benevolent to promote the interests of young women; and these are the special objects declared by the incorporators, who were moved by a desire to associate themselves for the purposes defined by the statute. We may safely reach the conclusion, therefore, that the purpose declared by the incorporators was to organize a benevolent society, which might include many of the elements of charitable, historical, scientific, and other societies; for the "promotion of the interests of young women," as we understand that phrase, includes all that makes for the development of perfect womanhood, whether spiritual, material, mental, or moral. The statute as amended clearly contemplated the organization of societies for the promotion of religious teachings, which are usually understood to include the spiritual development of the individual, and persons, acting under the provisions of chapter 319 of the Laws of 1848 as amended by the act of 1883, must be deemed to have contemplated, when organizing a society for the "amelioration of the condition and promotion of the interests of young women," an organization which was in harmony with the fundamentals, at least, of religious communities.

It is a maxim of the common law that "that rule of conduct is to be deemed binding which religion dictates" (Co. Lit. 341a), and in the

construction of statutes we are not to close our eyes to the common tendencies of the people, and where the language is broad and general in its scope we are not to interpret it as excluding from its purposes the religious predilections of the people. Looking back to the year 1885, before the Membership Corporations Law, it must be obvious that if the incorporators had elected to call their society the Young Women's Christian Association, and had declared its particular object to be the "improving the spiritual, mental, social and physical condition of young women," it would have been identical in purpose with the Young Women's Association whose "objects and particular business" were declared to be the "amelioration of the condition and promotion of the interests of young women," and under a provision as is now found in section 7, article 2, of the Membership Corporations Law, would have been subject to consolidation upon complying with the requirements of the statute.

[2] There is nothing in the record now before us to suggest that any of the declared purposes of the Young Women's Association of Troy cannot or will not be carried out by the successor to such corporation under the consolidation. The declared purposes of the Young Women's Christian Association are certainly broad and comprehensive enough to cover all of the declared objects of the original association; and as the appellants took whatever rights they have as members of the Young Women's Association, subject to the reserved rights of the Legislature to alter and amend the law, they are hardly in a position to complain because their fellow members, by a majority fixed by the law, have decided that the objects under contemplation may be best accomplished by a consolidation with a new corporation. They are not aggrieved so long as the objects for which the original corporation was created are being carried out, and the mere fact that they may have less rights in the election of officers or directors is not of the essence of the relation. The original association might have adopted by-laws under the provisions of section 8 of the Membership Corporations Law, which would have produced a like diminution in the powers of members, and no legal right would have been impaired. The fact that this result is accomplished by reason of the consolidation —if such is a fact—might very properly be urged as a reason why the members should refuse to give their consent; but it affords no ground for this court to interfere with a legitimate discretion of the Special Term in approving of such consolidation, when the members of both associations, acting in the manner pointed out by the statute, have given their consent. The law guards and preserves the objects of the corporations; but it does not undertake to establish a permanent condition of membership, and if the consolidation were set aside to-day the majority of the original association could, in its by-laws, deprive the appellants of the very privileges which they are now urging as the ground for a reversal of the order of the Special Term.

Inasmuch as the respondents consent thereto, it is deemed wise by the court, in the exercise of its discretion, to so modify the order appealed from that all regular members of either association shall be active members of the Young Women's Christian Association at

the time of the consolidation, and, as so modified, the order appealed from should be affirmed, without costs.

SMITH, P. J., and KELLOGG and LYON, JJ., concur.

HOWARD, J. (dissenting). The record shows that some of the members of the Young Women's Association are not in accord with Protestant evangelical denominations and teachings. There always has been, and there are to-day, in the association as active members, Roman Catholics, Hebrews, and those affiliated with no religious denomination. Perhaps this latter class may include those altogether unorthodox—even freethinkers and agnostics. It cannot be possible that the law would sanction, much less lend its arm to, the merger of such an association with a Protestant Christian association. In these days of enlightenment and liberality it would be atrocious to require a Jew or a Catholic to desert his faith and join a Protestant church in order to retain active membership in any association to which he may belong. It is a staggering proposition to present to the court. But this is exactly what we are being asked to do, for the fifth condition of the agreement of consolidation provides:

"Fifth. Among the qualifications for active membership shall be membership in some Protestant evangelical church."

The spirit of our American institutions is religious liberty and toleration; but when the law commands a Jew or a Roman Catholic or an agnostic to affiliate with a Protestant evangelical association, and, in case of his refusal to do so, strips him of all his rights in a corporation of which he is a member, such a mandate is not toleration; it is tyranny. These two associations cannot be merged unless they were incorporated for *kindred purposes.* Section 7, Membership Corporations Law. Can any nonsectarian body be said to be of a kindred purpose to a sectarian association? In order to be kindred they must be congenial; for, according to Webster, "kindred" is a synonym of "congenial." Can a Christian association be said to be congenial to a Jew? Or a Protestant association congenial to a Catholic? Or any kind of religious association congenial to an agnostic? Manifestly not.

Even if the modification suggested in the prevailing opinion were adopted, and all members of the old associations were to be clothed by the order of merger with all rights incident to membership in the new association—that is, be made eligible to membership and office in the new association, irrespective of their religious beliefs, which cannot be done under article 8 of the Membership Corporations Law—but even if this were to be done, I say, there remains the insurmountable obstacle of incongeniality; the incongruous spectacle of a Jew, a Catholic, and an agnostic being forced by American laws to parade as Protestant evangelicals. The purposes of the associations are not *kindred.* They are alien; and neither the statute nor the doctrine of religious liberty contemplates such an incompatible merger. The court should not force it.

The order of consolidation should be reversed.